[No. B125579. Second Dist., Div. Three. May 27, 1999.]

CAROL ALLISON, Petitioner v.
WORKERS' COMPENSATION APPEALS BOARD,
DEL AMO MOBILE HOMES ESTATES et al., Respondents.

**COUNSEL**

Rehm & Rogari, Joanna Rehm and Ralph Rogari for Petitioner.

No appearance for Respondent Workers' Compensation Appeals Board.

Laughlin, Falbo, Levy & Moresi and Michael J. Mayman for Respondents Del Amo Mobile Homes Estates and Superior Pacific Casualty Company.

**OPINION**

**CROSKEY, J.**—Petitioner Carol Allison (Allison) seeks relief from an order of a workers' compensation judge which directed her to answer deposition questions relating to her general past medical history. Allison

contends the scope of such deposition inquiry is overbroad, interferes with her right to assert the patient-physician privilege, and should be confined to questions regarding her wrist, which is the situs of the injury covered by workers' compensation law. She also contends the workers' compensation judge (WCJ) lacked authority to issue the discovery order. We agree with Allison's contention that the scope of the deposition inquiry permitted by the WCJ is overbroad. However, we disagree with her argument that WCJ's have no authority to consider, and make orders on, discovery disputes. We therefore reverse the discovery order and remand the case for further proceedings on the discovery issue consistent with the views expressed herein.

FACTUAL AND PROCEDURAL BACKGROUND

Allison is the applicant in the worker's compensation case entitled Allison v. Del Amo Mobile Homes Estates and bearing case No. POM 234030, which is pending before the Workers' Compensation Appeals Board (WCAB). According to Allison's petition for writ relief, filed September 17, 1998, she is a 55-year-old person who, in early 1996, began working as a property manager for her employer, real party in interest Del Amo Mobile Homes Estates (Del Amo). Her petition alleges that from February 1, 1996, through June 17, 1997, she sustained carpal tunnel injuries to her wrist in the course of performing her job duties.[1] She filed a claim for workers' compensation benefits in June 1997 and Del Amo began paying such benefits after investigating her claim.

Del Amo and its workers' compensation carrier, Superior Pacific Casualty Company (hereinafter referred to collectively with Del Amo), obtained an orthopedic examination of Allison by Roy Caputo, M.D. According to Dr. Caputo's written report dated September 10, 1997, Allison reported to him that her condition was caused by her job activities, especially a prolonged amount of writing. She stated she wrote more than 50 percent of her work day. Her other job duties included answering telephones and occasional typing. She worked eight hours a day, forty hours a week.

Dr. Caputo's report states Allison's past medical history is unremarkable, although she did report to him a history of thyroid disease with recent treatment; however she was not sure if she had any continuing problem with her thyroid function. He stated Allison was possibly hypothyroid. He reported she appeared to have right carpal tunnel syndrome. However, he

---

[1]Allison claimed a cumulative injury to her wrist. Under Labor Code section 3208.1, a cumulative injury is one which results from "repetitive mentally or physically traumatic activities extending over a period of time" which in combination cause a disability or need for medical treatment.

All further references herein to statutes are to the Labor Code unless otherwise stated.

expressed concern about whether her job activities as a property manager could have caused the carpal tunnel syndrome. He recommended a formal job analysis and assessment of her thyroid function. He noted she was scheduled for an electrodiagnostic test and he stated the test would be helpful because if it "does show any evidence of a peripheral neuropathy, this will rule out any industrial causation. If the electrodiagnostic testing does show evidence of carpal tunnel syndrome and thyroid testing does not revel hypothyroidism, a decision will need to be rendered in regards to whether her work activities could have caused this condition." The record does not reveal whether these tests and analysis were performed.

While Allison was recuperating from surgery to her wrist, Del Amo noticed her deposition, which was taken in December 1997. During the course of the deposition, Del Amo's attorney questioned Allison as to whether she had been hospitalized prior to 1965. Her attorney objected to the question, stating it invaded Allison's medical privacy and violated her patient-physician privilege. Allison's attorney stated Allison could be questioned about her wrist. He instructed her to not answer the question regarding her hospitalization, and he cited Del Amo's counsel to *Britt* v. *Superior Court* (1978) 20 Cal.3d 844 [143 Cal.Rptr. 695, 574 P.2d 766], saying it stands for the proposition that a person claiming an injury can be questioned on the areas of her body put into issue by her case, but not questioned on unrelated medical matters. He argued Allison could answer questions regarding doctors and treatments to her wrist "at any point in time in her life" and that she could answer questions about who her family physicians were for the past 15 years, but he would object to a request for records from such doctors to the extent the request was not limited to the wrist. Upon hearing Allison's attorney's objection, counsel for Del Amo indicated the deposition was over and stated he would move to set the rest of Allison's deposition before a workers' compensation judge.

Thereafter, Del Amo filed a motion to set Allison's deposition at the Santa Monica WCAB, compel answers, and obtain costs and sanctions. Citing *Greyhound Corp.* v. *Superior Court* (1961) 56 Cal.2d 355 [15 Cal.Rptr. 90, 364 P.2d 266], Del Amo argued that deposition questions are permitted if reasonably calculated to lead to the discovery of admissible evidence. Del Amo noted Dr. Caputo's concern about the cause of Allison's right hand injuries and her prior thyroid problems, and argued that examining counsel is therefore entitled to ask Allison about her entire medical history, no matter how remote, and is not limited to asking her questions related to her wrist. Del Amo also argued it was inappropriate for counsel to instruct Allison to not answer a question when the objection is based on relevancy.

Allison filed opposition to Del Amo's motion, contending that questions regarding her lifetime medical history were prohibited by privacy rights and

were not made relevant by Dr. Caputo's report, which was more limited in scope. She noted that Dr. Caputo requested a job analysis for her, not a medical history beyond that which he had already obtained from her. She also argued that Del Amo's request for sanctions was unwarranted because Del Amo should have finished her deposition by asking nonobjectionable questions and then later brought the issue of the objected-to questions to the WCAB instead of ending the deposition.

The WCJ who heard the motion issued an interim order permitting the disputed discovery. He ruled that because she had filed a workers' compensation claim, Allison was not entitled to claim, during discovery, a doctor-patient privilege with respect to her medical records. He further ruled that any objections by her regarding relevancy and admissibility of such evidence would properly be determined by the WCJ after hearing arguments and reviewing the evidence.

Allison then filed a petition for removal to the WCAB pursuant to section 5310[2] and case law which indicates the removal procedure is proper for discovery orders.[3] She requested that the WCAB protect her privacy and patient-physician privilege rights by reversing the discovery decision of the WCJ.[4] In addition, Allison contended that a WCJ has no express or implied authority to compel deposition answers, arguing that section 132 requires a WCJ to seek a superior court order when a deponent fails to give testimony. (Section 132 is addressed *post.*)

The WCJ filed a "report and recommendation on petition for removal," wherein he argued that Allison's claim of a patient-physician privilege was waived since she had filed a claim for injury. He also stated that since no hospital or medical records had been presented, the issue of whether such records are relevant and are admissible could not be determined; thus the WCJ would have to review the challenged evidence and hear arguments before determining relevancy and admissibility. He argued that without a final order as to admissibility, no irreparable harm or prejudice to Allison

---

[2]Section 5310 provides: "The appeals board may appoint one or more workers' compensation judges in any proceeding, as it may deem necessary or advisable, and may refer, remove to itself, or transfer to a workers' compensation judge the proceedings on any claim. The administrative director may appoint workers' compensation judges. Any workers' compensation judge appointed by the administrative director has the powers, jurisdiction, and authority granted by law, by the order of appointment, and by the rules of the appeals board."

[3]Removal to the WCAB generally involves interlocutory or nonfinal orders such as the discovery disputes in *Hardesty* v. *McCord & Holdren, Inc.* (1976) 41 Cal.Comp.Cases 111 and *Lubin* v. *Berkley East Convalescent Hospital* (1976) 41 Cal.Comp.Cases 283.

[4]In *Hardesty* v. *McCord & Holdren, Inc., supra,* 41 Cal.Comp.Cases 111, 115, the WCAB stated it is "clear" that the provisions in the Evidence Code which relate to privilege are applicable to workers' compensation proceedings.

has occurred, and he recommended against removal to the WCAB. He also argued that allowing Allison's claim of privilege "would place [Allison's] attorney in the position of being the decider of issues that may determine the outcome and extent of liability without regard of issues such as apportionment or indeed industrial causation."

The WCAB adopted the WCJ's report and denied removal. Thereafter, Allison filed her petition for appellate review, arguing her right to assert the physician-patient privilege against discovery of her entire life's medical history, and contending WCJ's have no authority to compel her to answer questions at her deposition.

We issued a writ of review, directing the WCAB to certify and submit to this court the record in this case. Under section 5950, persons affected by "an order, decision, or award of the [WCAB] may . . . apply to the . . . court of appeal . . . for a writ of review, for the purpose of inquiring into and determining the lawfulness of the . . . order, decision, or award . . . ."

ISSUES RAISED IN THIS WRIT PROCEEDING

Two issues are raised in this writ proceeding. ▇ First, to what extent does a workers' compensation claimant retain the right to assert the patient-physician privilege regarding her past medical history after she has filed her claim? ▇ Second, do WCJ's have authority to issue orders compelling discovery?[5]

DISCUSSION

1. *The Britt Decision*

In *Britt* v. *Superior Court, supra,* 20 Cal.3d 844 (*Britt*), homeowners and residents filed an action for damages, personal injury and emotional disturbance against a public agency operating an airport. When the defendant "sought to mount a . . . wide-ranging inquiry into plaintiffs' medical history," "encompassing all illnesses, physical injuries, and mental or emotional disturbances for which plaintiffs sought treatment at any time during their lives" (*id.* at p. 850), the plaintiffs refused the discovery requests and moved for a protective order. The defendant moved for an order to compel responses to the requested discovery. The trial court issued an order denying

[5]In a letter brief to this court, Allison expresses curiosity as to why Del Amo sought to depose her since (1) "[Del Amo] admitted causation, i.e., that [Allison's] injuries arose out of and in the course and scope of her employment," and (2) "[p]ermanent disability was not then at issue and still is not, as [Allison] continues to recover from her surgeries." We wondered the same thing. However, because Allison has not challenged the taking of the deposition itself, we do not address that matter.

the former motion and granting the latter. In its presentation to the Supreme Court, the defendant argued "that the broad discovery order properly affords it the opportunity to determine for itself whether the injuries, which plaintiffs assert were caused by airport operations, actually arose from other medical conditions." (*Id.* at p. 862.)

The Supreme Court ruled that although the plaintiffs waived their physician-patient confidential communication privilege (Evid. Code, § 990 et seq.) and their psychotherapist-patient confidential communication privilege (Evid. Code, § 1010 et seq.) as to the medical, emotional, and mental conditions placed by them in issue in the case, and information regarding such conditions was therefore discoverable, all medical privacy was not waived.[6] (*Britt, supra*, 20 Cal.3d at pp. 849, 862-864.) The court referred to its earlier decision *In re Lifschutz* (1970) 2 Cal.3d 415 [85 Cal.Rptr. 829, 467 P.2d 557, 44 A.L.R.3d 1], wherein the court held that while disclosure can be compelled with respect to a plaintiff's mental conditions which she has disclosed by placing them in issue in an action, "[d]isclosure cannot be compelled with respect to other aspects of the patient-litigant's personality even though they may, in some sense, be 'relevant' to the substantive issues of litigation. . . . [T]he scope of the inquiry permitted depends upon the nature of the injuries which the patient-litigant himself has brought before the court." (*Id.* at p. 435.)

The same reasoning was applied in *Palay v. Superior Court* (1993) 18 Cal.App.4th 919 [22 Cal.Rptr.2d 839], where a three-year-old child sued his medical providers, alleging negligent care in failing to adequately diagnose and treat his cardiac disease which had been detected when he was born. The court stated that although such a young child's medical history does include the prenatal records which reflect his medical condition while *in utero*, the scope of the defendants' original discovery request was overbroad. The defendants initially sought to discover information regarding all aspects of the child's mother's medical history. Later they limited their request for production to the mother's medical records for the period during which she was pregnant with the plaintiff child. (*Id.* at p. 924, fn. 6.) The court went on to say that the defendants had "no cognizable interest in medical records unrelated to Mother's pregnancy . . . . Discovery procedures must be utilized that identify and remove documents irrelevant and immaterial to the issue of prenatal care. The scope of methods used must be tailored to avoid disclosure of protected records." (*Id.* at p. 934.)

---

[6]Under the Evidence Code, there is no privilege as to a communication relevant to an issue concerning the physical, mental or emotional condition of the patient if such issue has been tendered by the patient in an action. (Evid. Code, §§ 996 (physician-patient privilege) and 1016 (psychotherapist-patient privilege.)

■ Applying, to the instant case, these guidelines regarding the physician-patient privilege and the litigation exception to that privilege, we note that Del Amo's expert, Dr. Caputo, informed Del Amo of both the areas of concern he had regarding Allison's claim and the tests which he felt should be done (job analysis, electrodiagnostic test, and thyroid test). Thus, Del Amo's own expert's analysis of Allison's claim narrows the current scope of discovery to something far less broad than what Del Amo's attorney sought at the deposition, that is, a general inquiry into Allison's hospitalization history prior to 1965.

## 2. *Procedure for Narrowing Disputed Discovery*

In *Britt*, the reviewing court declined to "determine with precision which portion of the requested [discovery] information is privileged and which is not, for in any event the discovery authorized by the challenged order is clearly overbroad." The court said that "[o]n remand, defendant will bear responsibility for framing narrower, more precisely tailored interrogatories which do not improperly impinge on privileged information." (*Britt, supra*, 20 Cal.3d at p. 863, fn. 7.) In *Hardesty* v. *McCord & Holdren, Inc., supra*, 41 Cal.Comp.Cases at page 116, the WCAB "modif[ied] the order [of the WCJ] to exempt from disclosure any matter or communication which is privileged within the meaning of the provisions of [the privilege portions] of the Evidence Code." However, "[f]or the guidance of the parties," the WCAB stated "that an attorney claiming a privilege on behalf of his client does not have the right unilaterally to determine the validity of his claim. Accordingly, if privilege is claimed, it is incumbent on the attorney claiming the privilege to so advise opposing counsel so that opposing counsel can, if he wishes, bring the matter before a workers' compensation judge for determination of the validity of the claim." (*Ibid.*)

## 3. *WCJ's Have Authority to Compel Answers to Deposition Questions*

■ Allison asserts that WCJ's have no authority to decide her claim of a physician-patient confidential communication privilege and no authority to compel her to answer deposition questions. To support her position, Allison cites *Marcus* v. *Workmen's Comp. Appeals Bd.* (1973) 35 Cal.App.3d 598 [111 Cal.Rptr. 101] where the court held that the WCAB could not designate WCJ's as persons to conduct contempt proceedings because a provision in the Labor Code grants such power to the WCAB and its members. However, Allison has not cited any statute which specifically gives the WCAB and its members the authority to decide evidentiary objections which are raised at .

depositions noticed by parties, such as Allison's was, and compel a witness to provide answers at such depositions.[7]

We find that section 5310 supports the conclusion that WCJ's have authority to decide discovery disputes. Section 5310 states that WCJ's have "the powers, jurisdiction, and authority granted by law, by the order of appointment, and by the rules of the [WCAB]." (See fn. 2, *ante*.) There is *case law* which grants WCJ's authority to compel discovery. As noted above, in *Hardesty* v. *McCord & Holdren, Inc., supra*, 41 Cal.Comp.Cases 111, the WCAB stated that discovery disputes should be brought to "a workers' compensation judge for determination of the validity of the claim." (*Id.* at p. 116.)

In *Hardesty*, the relatives of the decedent employee sought production of the defendants' claims records and investigative reports regarding the decedent's demise. The defendants refused to produce the documents, citing the attorney-client privilege (Evid. Code, § 950 et seq.) and the work product rule (Code Civ. Proc., § 2018). The WCJ ordered inspection of witness statements, in the possession of the employer's insurance carrier, regarding the alleged industrial injury. The WCAB affirmed that requirement of inspection. It noted that generally, the provisions of the Code of Civil Procedure discovery statutes do not apply in workers' compensation cases,

---

[7]While the Labor Code does contain statutes which specifically address the production of testimony in workers' compensation cases, such statutes do not decide the question whether the WCJ had authority to decide Allison's evidentiary objections and compel her to answer questions at the deposition noticed by Del Amo.

Section 5710 provides for depositions in investigations and hearings before the WCAB. It states in relevant part: "(a) The appeals board, a workers' compensation judge, or any party to the action or proceeding, may . . . cause the deposition of witnesses . . . to be taken in the manner prescribed by law for like depositions in civil actions in the superior courts of this state under [the Civil Discovery Act of 1986, which is found at Code of Civil Procedure section 2016 et seq.]. To that end the attendance of witnesses and the production of records may be required."

The WCAB argues that because the sections of the Code of Civil Procedure which govern the taking of depositions in civil cases provide for compelling testimony, WCJ's are given, by section 5710, authority to compel discovery. We disagree. In stating that depositions may be "caused" to be taken in the *manner* prescribed by the Code of Civil Procedure, section 5710 simply directs that persons setting depositions must comply with that code's "when," "where" and "how" directives.

Section 130 gives "[t]he appeals board and each of its members, its secretary, assistant secretaries, and workers' compensation judges" the authority to "issue subpoenas for the attendance of witnesses and the production of papers, books, accounts, documents and testimony in any inquiry, investigation, hearing or proceeding in any part of the state." Section 132 gives the superior court the authority to compel testimony when a witness is subpoenaed and is slated to give testimony before the WCAB or a WCJ but refuses to do so. These two statutes are not applicable here because Allison's deposition was set by notice, not subpoena; moreover, when she objected to Del Amo's questions she was not testifying before the WCAB or the WCJ.

and it said that in most cases the Labor Code and the WCAB's rules of practice and procedure (§ 5307) provide "adequate tools to the practitioner" for liberal discovery. However, in situations where Labor Code provisions and the rules are not adequate and convenient, "on appropriate motion and on appropriate showing of good cause, the [WCJ] has, and should exercise the authority conferred on him by § 10345[8] of our rules to issue such interlocutory orders relating to discovery as he determines are necessary to insure the full and fair adjudication of the matter before him, to expedite litigation and to safeguard against unfair surprise. In exercising his discretion in this area, the [WCJ] should try to achieve an appropriate balance between the public policy favoring liberality of pre-trial discovery and the specific policy applicable to workers' compensation cases that they shall be adjudicated expeditiously, inexpensively and without encumbrance of any character." (*Hardesty* v. *McCord & Holdren, Inc.*, *supra*, 41 Cal.Comp.Cases at pp. 113-115.)

*Hardesty* is cited with approval in *Lubin* v. *Berkley East Convalescent Hospital*, *supra*, 41 Cal.Comp.Cases at page 286, and *Commander* v. *Union Oil Company of California* (1980) 45 Cal.Comp.Cases 1058, 1060 et seq.; and *Hardesty* was impliedly approved of, on another point, by this division in *Ford* v. *Workers' Compensation Appeals Board* (1994) 59 Cal.Comp.Cases 789, 791, writ denied. In *Commander*, the WCAB stated: "The Board is persuaded that the same public policy which motivated the Board to issue the en banc decision in *Hardesty* applies here. The Board is of the opinion that it is proper for a trial judge to exercise discretion in an appropriate manner by ordering a party to make available to the other copies of statements and investigations in the possession of the other party." (45 Cal.Comp.Cases at p. 1062.) In *Commander*, the WCAB went on to set out "procedures [which] might be used to guarantee due process and at the same time expedite discovery proceedings." (*Id.* at p. 1063.) The court stated: "In the first place, the discovery issue should be raised at the time of the pre-trial conference and an appropriate order requested from the workers' compensation judge if the parties are unable to work the matter out informally. If there has been no pre-trial conference, it is appropriate to file a motion . . . . Such motion or petition should include a statement that a request for the sought information has been made from the opposing party

---

[8]Rule 10345 no longer exists. However, it was nearly identical to current rule 10348. (Cal. Code Regs., tit. 8, § 10348.) The latter rule states in relevant part: "In any case which has been regularly assigned to a workers' compensation judge for trial under the provisions of Labor Code sections 5309 and 5310, a workers' compensation judge shall have full power, jurisdiction and authority to hear and determine all issues of fact and law presented and to issue such interim, interlocutory and final orders, findings, decisions and awards as may be necessary to the full adjudication of the case . . . ." Current rule 10348 differs from former rule 10345 in that the WCJ is now granted authority to issue "interim" orders.

and that party has refused to comply with the request. The motion may either request that the matter be set promptly on a pre-trial conference or informal conference before the workers' compensation judge giving the adverse party an opportunity to respond to the motion or the motion may be submitted with a self-executing order which gives the opposing party an opportunity to object and to request a hearing. If a hearing is requested, it then could be set promptly on a conference calendar for resolution by a workers' compensation judge." (*Ibid.*)

These WCAB cases lead us to conclude that WCJ's have authority to hear discovery disputes and make orders respecting the same. It is within their sound discretion to determine if a discovery dispute is appropriate for a hearing.[9]

### DISPOSITION

The order of the WCJ is reversed and the case is remanded for further proceedings, on the issue of the disputed discovery, consistent with the views expressed herein. Costs on appeal to Allison.

Klein, P. J., and Kitching, J., concurred.

Respondents' petition for review by the Supreme Court was denied August 25, 1999.

---

[9]Allison argues that because the WCJ who heard her discovery dispute had not yet been assigned as the trial judge for her case, this precluded him from having authority under rule 10348 (fn. 8, *ante*) to issue an interim order such as the order compelling her to answer deposition questions. Because we are remanding this case for further proceedings on the discovery issue, the parties can request that a WCJ be assigned to this case. Such a procedural tactic (asking for assignment) can be used by all parties who have such disputes but lack an assigned WCJ.