[No. D036000. Fourth Dist., Div. One. Mar. 16, 2001.]

SAN DIEGO TROLLEY, INC., et al., Petitioners, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent;
DANNIELLE M. KINDER, Real Party in Interest.

## Counsel

Daley & Heft, Robert R. Heft and Lee H. Roistacher for Petitioners.

No appearance for Respondent.

Greene, Broillet, Raylor, Wheeler & Panish and Mark T. Quigley for Real Party in Interest.

## Opinion

**BENKE, J.**—In this writ proceeding we find the trial court's discovery order infringes upon a witness's psychotherapist-patient privilege as well her right to privacy. Accordingly, we grant the witness's writ and direct the trial court to enter a new order consistent with the views we express.

### Summary

Real party in interest Dannielle M. Kinder was severely injured on August 27, 1998, when she attempted to climb over the coupling device of two trolleys operated by petitioners San Diego Trolley, Inc., and Metropolitan Transit Development Board (collectively Trolley). Kinder made her attempt from the platform of an eastbound trolley which was stopped at one of Trolley's station. While waiting on the eastbound platform, Kinder discovered she wanted to get on a westbound trolley, which had also stopped at the station. Kinder was able to get over the coupling device on the eastbound trolley; as she was doing so Kinder was seen by the operator of the eastbound trolley who attempted to alert his counterpart on the westbound trolley. Unfortunately, the operator of the westbound trolley, petitioner Sherryl Ann Cooper, had just started to move her trolley and Kinder became trapped beneath it.

Kinder was severely injured and sued Trolley. She alleged Cooper had been negligent in failing to activate a buzzer and public announcement warning of the impending departure of her trolley. Kinder took Cooper's deposition and Cooper stated she had begun suffering anxiety attacks in 1995 following the murder of a passenger on a trolley she was operating. Cooper disclosed at the deposition she was being treated for the anxiety by a psychiatrist, that at the time of Kinder's injury she was taking three prescription medications (50 mg. Paxil, .5 mg. Risperdal and .5 mg. Klonopin), and that she had informed her supervisors about her treatment and medication. Cooper testified the stress engendered by the Kinder incident had prevented her from returning to work for Trolley, and further that

she was still being treated by a psychiatrist and had filed a stress-related workers' compensation claim against Trolley.

In response to the information she obtained at Cooper's deposition, Kinder served the Trolley with a request to produce Cooper's personnel file and noticed depositions of two Trolley employees with knowledge of the contents of the file. Kinder also served document subpoenas on Cooper's pharmacy, her health maintenance organization, the Trolley's workers' compensation carrier and lawyers who had participated in her prior workers' compensation claims.

In light of privacy objections asserted by Cooper, neither Trolley, Cooper's psychiatrist nor the third parties on whom Cooper had served document subpoenas complied with Kinder's discovery requests. Kinder then moved to compel responses to her discovery requests, arguing Cooper had waived her physician-patient and psychotherapist-patient privileges by revealing her condition both at her deposition in this case and in the course of making her workers' compensation claims. Kinder argued that any general privacy interest Cooper had in preventing disclosure of either her psychiatric records, personnel files or workers' compensation claims was outweighed by Kinder's need to prosecute her personal injury claim.

The trial court ordered Trolley to produce to it under seal the requested personnel records. Following argument, and its in camera review of the documents Trolley had produced, the trial court granted Kinder's motion to compel. The trial court ordered Trolley to produce its records of Cooper's workers' compensation claims and her personnel file; one of Cooper's supervisors at Trolley was directed to testify as to whether he knew she was taking prescription drugs at the time Kinder was injured; Cooper's psychiatrist was directed to appear for his deposition; Cooper's health maintenance organization was directed to respond to Kinder's document subpoena, as were the attorneys who had participated in disposition of Cooper's earlier workers' compensation claim. However, the trial court also found no documents or responses which required disclosure of attorney-client or doctor-patient communications was required unless "such information is contained in workers' compensation files or the Trolley personnel file."

Trolley and Cooper filed a petition for a writ of mandate in which they asked us to direct the trial court to vacate its order. We stayed enforcement of the order and issued an order to show cause.

### DISCUSSION

In arguing the trial court erred in requiring disclosure of information about Cooper's psychological condition and employment history, in the main

Trolley and Cooper rely upon the psychotherapist-patient privilege set forth in the Evidence Code and on Cooper's right of privacy, as guaranteed by article I, section 1 of the California Constitution. As she did in the trial court, Kinder argues Cooper waived the privileges and that Cooper's more general right of privacy must yield to Kinder's need to fully prosecute her claim.

## I. *Psychotherapist-patient Privilege*

### A. *Scope*

◼ Our Supreme Court has consistently recognized " 'the public interest in supporting effective treatment of mental illness and . . . the consequent public importance of safeguarding the confidential character of psychotherapeutic communication.' [Citations.]" (*People v. Wharton* (1991) 53 Cal.3d 522, 555 [280 Cal.Rptr. 631, 809 P.2d 290], quoting *Tarasoff v. Regents of University of California* (1976) 17 Cal.3d 425, 440 [131 Cal.Rptr. 14, 551 P.2d 334, 83 A.L.R.3d 1166].) At the time the psychotherapist-patient privilege was adopted, it was noted: "Psychoanalysis and psychotherapy are dependent upon the fullest revelation of the most intimate and embarrassing details of the patient's life . . . . Unless a patient . . . is assured that such information can and will be held in utmost confidence, he will be reluctant to make the full disclosure upon which diagnosis and treatment . . . depends." (Sen. Com. on Judiciary com., 29B pt. 3 West's Ann. Evid. Code (1995 ed.) foll. § 1014, p. 333.)

By its terms the psychotherapist-patient privilege protects "confidential communication between patient and psychotherapist." (Evid. Code, §§ 1012, 1014.) Nonetheless, "[t]he privilege can cover a communication that was never, in fact, 'confidential'—so long as it was made in confidence. The communication need only comprise 'information . . . transmitted between a patient and his psychotherapist in the course of that relationship and in confidence by a means which, *so far as the patient is aware*, discloses the information' to no 'outside' third person. [Citation.]

"Similarly, the privilege can cover a communication that has lost its 'confidential' status.

" '[T]he patient . . . has a privilege to refuse to disclose, *and to prevent another from disclosing*, a confidential communication between patient and psychotherapist . . . .' [Citation.]" (*Menendez v. Superior Court* (1992) 3 Cal.4th 435, 447-448 [11 Cal.Rptr.2d 92, 834 P.2d 786].)

The "privilege to prevent" disclosure to others not only prevents disclosures by a patient's psychotherapist, it also governs *any* other third person

privy to a confidential communication. (*Menendez v. Superior Court, supra,* 3 Cal.4th at p. 448.) "In this aspect, the 'privilege to prevent' effectively repudiates the old 'eavesdropper rule,' under which the privilege is defeated whenever any 'outside' 'third person—eavesdropper, finder or interceptor— overhears or otherwise receives the confidential communication . . . .' [Citations.]" (*Ibid.*)

In categorically rejecting the notion that the privilege is lost as soon as any communication loses its confidential status, the court in *Menendez v. Superior Court* focused on the purpose of the privilege, which is to protect the patient's "right to privacy and promote the psychotherapeutic relationship." (*Menendez v. Superior Court, supra,* 3 Cal.4th at p. 448.) The court concluded the privilege may survive even broad disclosure of a communication because the psychotherapeutic relationship, much like other relationships, may survive such a disclosure. (*Ibid.*)

██ The relatively high importance of protecting psychotherapeutic confidentiality can be seen in the fact that, unlike the physician-patient privilege, the psychotherapist-patient privilege is not subject to a good cause exception in personal injury actions. (*City of Alhambra v. Superior Court* (1980) 110 Cal.App.3d 513, 519 [168 Cal.Rptr. 49].) However, as important as psychotherapeutic confidentiality is, even its value may be outweighed by other societal interests. Thus, where a patient is dangerous and disclosure of confidential communication is necessary to prevent harm, the psychotherapist-patient privilege has no application. (Evid. Code, § 1024; see *Menendez v. Superior Court, supra,* 3 Cal.4th at p. 449; *People v. Wharton, supra,* 53 Cal.3d at pp. 548-563; *Bellah v. Greenson* (1978) 81 Cal.App.3d 614, 622 [146 Cal.Rptr. 535, 17 A.L.R.4th 1118]; *Tarasoff v. Regents of University of California, supra,* 17 Cal.3d at p. 441, fn. 13.)[1] The exception is an expression of the Legislature's determination that the value of safeguarding confidential psychotherapeutic communications, as great as it is, is outweighed by the public interest in protecting foreseeable victims from physical harm. (See *Tarasoff v. Regents of University of California, supra,* 17 Cal.3d at p. 441, fn. 13.)

The "dangerous patient" exception to the privilege is narrow in the sense it only permits disclosure of those communications which triggered the psychotherapist's conclusion that disclosure of a communication was needed to prevent harm. (*People v. Wharton, supra,* 53 Cal.3d at pp. 554-556, 561.)

---

[1]Evidence Code section 1024 provides: "There is no privilege under this article if the psychotherapist has reasonable cause to believe that the patient is in such mental or emotional condition as to be dangerous to himself or to the person or property of another and that disclosure of the communication is necessary to prevent the threatened danger."

However, Evidence Code section 1024 creates an exception to the privilege rather than anything akin to a waiver of the privilege. (*Wharton, supra*, at p. 561.) Hence when the factual predicate of the exception exists, an excepted communication may be used in any further proceeding, even though the threat identified by the psychotherapist no longer exists. (*Id.* at pp. 561-562; *People v. Gomez* (1982) 134 Cal.App.3d 874, 881 [185 Cal.Rptr. 155]; *Mavroudis v. Superior Court* (1980) 102 Cal.App.3d 594, 604 [162 Cal.Rptr. 724].)

### B. *Waiver*

■ Of course the psychotherapist-patient privilege may be waived when the patient voluntarily discloses otherwise confidential information or tenders her mental state as an issue. (See Evid. Code, §§ 912, subd. (a), 1016; *Roberts v. Superior Court* (1973) 9 Cal.3d 330, 340 [107 Cal.Rptr. 309, 508 P.2d 309].) However, "[t]he waiver of an important right must be a voluntary and knowing act done with sufficient awareness of the relevant circumstances and *likely consequences*." (*Roberts v. Superior Court, supra,* 9 Cal.3d at p. 343, italics added.)

Importantly, when a patient has, either by way of disclosing confidential information or by putting his or her mental state in issue, waived the privilege, the patient does not lose all privacy interest in information otherwise protected by the privilege. (*In re Lifschutz* (1970) 2 Cal.3d 415, 435 [85 Cal.Rptr. 829, 467 P.2d 557, 44 A.L.R.3d 1]; *Britt v. Superior Court* (1978) 20 Cal.3d 844, 849, 862-864 [143 Cal.Rptr. 695, 574 P.2d 766]; *Jones v. Superior Court* (1981) 119 Cal.App.3d 534, 548-551 [174 Cal.Rptr. 148]; *Palay v. Superior Court* (1993) 18 Cal.App.4th 919, 934 [22 Cal.Rptr.2d 839]; *Allison v. Workers' Comp. Appeals Bd.* (1999) 72 Cal.App.4th 654, 660-661 [84 Cal.Rptr.2d 915].) Notwithstanding waiver of a statutory privilege, a patient retains the more general right to privacy protected by the state and federal Constitutions. (*Jones v. Superior Court, supra,* 119 Cal.App.3d at p. 551.) Thus, any waiver must be narrowly construed and limited to matters "as to which, based upon [the patient's] disclosures, it can reasonably be said [the patient] no longer retains a privacy interest." (*Ibid.*)

Under Evidence Code section 912, subdivision (a), a waiver requires disclosure "of a significant part of the communication" and thus the Supreme Court has "made it clear that the mere disclosure of the *existence* of the psychotherapist-patient relationship does not reveal a significant part of the communication and thus does not constitute a waiver." (*Roberts v. Superior Court, supra,* 9 Cal.3d at p. 340.) Even when a patient has revealed the *purpose* of psychiatric treatment, no waiver of the privilege occurs. (*Ibid.*) "There is a vast difference between disclosure of a general description of the

object of . . . psychotherapeutic treatment, and the disclosure of all or a part of the patient's actual communications during psychotherapy." (*Ibid.*)

Similarly, any waiver of the psychotherapist-patient privilege which occurs by virtue of a claim asserted by a patient, "must be construed not as a complete waiver of the privilege but only as a limited waiver concomitant with the purposes of the exception." (*In re Lifschutz, supra*, 2 Cal.3d at p. 435.) Any broader interpretation of the patient litigant waiver must be rejected because "it might effectively deter many psychotherapeutic patients from instituting any general claim for mental suffering and damage out of fear of opening up all past communications to discovery. This result would clearly be an intolerable and overbroad intrusion into the patient's privacy, not sufficiently limited to the legitimate state interest embodied in the provision and would create opportunities for harassment and blackmail." (*Ibid.*)

Moreover, notwithstanding a waiver, any disclosure of confidential or private information must be supported by a showing of compelling need and accomplished in a manner which protects, insofar as is practical, the patient's privacy. (*Palay v. Superior Court, supra*, 18 Cal.App.4th at pp. 933-934.) In this regard, the Supreme Court has made it clear that even where a waiver has occurred, "the codes provide a variety of protections that remain available to aid in safeguarding the privacy of the patient." (*In re Lifschutz, supra*, 2 Cal.3d at p. 437.) In *Lifschutz* the court noted during the discovery phase of litigation those protections include the availability of orders sealing depositions and in the trial phase wide trial court discretion in excluding evidence on the basis the potential harm caused by public disclosure of a confidential communication outweighs its probative value. (*Id.* at p. 438; see also *Palay v. Superior Court, supra*, 18 Cal.App.4th at p. 934.)

In light of these principles, any waiver of the psychotherapist-patient privilege which has occurred in one proceeding must be carefully limited with respect to its later use in entirely unrelated proceedings. (See *Board of Medical Quality Assurance v. Gherardini* (1979) 93 Cal.App.3d 669, 678 [156 Cal.Rptr. 55] ["[F]undamental to the privacy of medical information 'is the ability to control [its] circulation . . . .' "; see also *People v. Superior Court (Broderick)* (1991) 231 Cal.App.3d 584, 590 [282 Cal.Rptr. 418].) Because among other reasons nontestimonial pretrial disclosures of privileged communications are not usually made in a public setting, are not otherwise widely disseminated and in fact may be subject to judicial protection from wide dissemination, a pretrial disclosure of such a communication may not suggest to a patient the possibility that the information disclosed will be available to anyone who, at anytime in the future, believes he needs

the information. Of concern here also is the impact the uncontrolled use of information disclosed in one setting might have on a litigant's behavior: in the absence of some limitation as to later use of confidential information psychotherapeutic patients will be unnecessarily discouraged from asserting compensation for emotional injuries for fear that any disclosure needed to obtain compensation will haunt them in perpetuity. (See *In re Lifschutz, supra*, 2 Cal.3d at p. 435.)

With these general principles which govern the psychotherapist-patient privilege in mind, we turn to the discovery requested by Kinder.

## II. *Confidential Communications with Cooper's Psychiatrist*

 Our review of the record convinces us Cooper is entitled to prevent disclosure of any confidential communications she had with her psychiatrist, other than those that fall within the "dangerous patient" exception set forth in Evidence Code section 1024.

Contrary to Kinder's argument, neither Cooper's testimony in this case, the fact she made a workers' compensation claims against her employer, nor any disclosure she made in that proceeding deprive her of the power to prevent disclosure of confidential communications with her psychiatrist. At her deposition in this case Cooper only disclosed the fact that she was being treated for anxiety by a psychiatrist and the medications the psychiatrist had prescribed. Nothing in this testimony can be construed as disclosing any significant part of her communications with her psychiatrist. (*Roberts v. Superior Court, supra*, 9 Cal.3d at pp. 340-341.)

Moreover, neither the workers' compensation claims Cooper made against Trolley themselves nor any disclosure of confidential communication information which occurred in the course of those proceedings will support access to confidential communications here. First, the record here contains no evidence that in the workers' compensation proceedings any significant part of any confidential communication between Cooper and her psychiatrist was disclosed in any testimonial setting. Indeed, there is no suggestion any formal discovery, trial or hearing on Cooper's claims has ever occurred. Moreover, there is no other circumstance in the record from which it would be reasonable to conclude Cooper understood any confidential communications with her psychiatrist which were disclosed in the workers' compensation proceedings would be available to anyone other than those considering her claims. Given the foregoing we are reluctant to conclude that Cooper knowingly gave up her right to prevent others from disclosing confidential communications they may have become privy to in the course of handling her workers' compensation claims.

In this regard, like the court in *Menendez*, our focus is on preservation of Cooper's relationship with her psychiatrist and more broadly her ability to have a trusting therapeutic relationship with other psychotherapists. The fact Cooper has been willing to put her psychotherapeutic relationship somewhat at risk in the workers' compensation proceedings and the relationship was evidently able to withstand whatever limited disclosure occurred there does not support an inference Cooper meant her relationship with her psychiatrist could continue to be put at risk following disposition of her claims.

We of course recognize that in *Menendez* the court was looking at the consequences of involuntary disclosure to an eavesdropper and here we are asked to consider the impact of voluntary disclosure to participants in a prior proceeding. ■ However, even if we assume disclosure to those handling the workers' compensation claim amounted to a waiver of the privilege provided by Evidence Code section 1014, that information is still protected from unconditional disclosure by the state and federal Constitutions. (See *Palay v. Superior Court, supra,* 18 Cal.App.4th at pp. 933-934; see also *Harding Lawson Associates v. Superior Court* (1992) 10 Cal.App.4th 7, 9-10 [12 Cal.Rptr.2d 538].) While the protection of the Constitution is not absolute, it requires Kinder to demonstrate a compelling need for access to the otherwise private information. (*Palay v. Superior Court, supra,* 18 Cal.App.4th at p. 934; *Harding Lawson Associates v. Superior Court, supra,* 10 Cal.App.4th at pp. 9-10.) In order to show a compelling need, a litigant must demonstrate not only the information is material to disposition of the litigant's rights but also that there is no other less intrusive means of obtaining the needed information. (*Palay v. Superior Court, supra,* 18 Cal.App.4th at p. 934; *Harding Lawson Associates v. Superior Court, supra,* 10 Cal.App.4th at pp. 9-10.) Here, in light of Cooper's deposition testimony, in which she disclosed the nature of her treatment, the medications she was taking and the fact that she had informed her supervisors at Trolley about her treatment and medication, Kinder cannot meet this burden. Given the information which Cooper has already disclosed, Kinder, by way of expert testimony, has adequate means of establishing the existence of any impairment of Cooper's ability to operate the trolley.[2] Although Kinder contends she also needs to demonstrate Trolley was aware of Cooper's disability, revelation of confidential communications Cooper had with her psychiatrist are not nearly as probative as to what Trolley knew about her condition as is her statement that she fully informed her supervisors about her treatment.

---

[2]In this regard we note Kinder's discovery motion was not supported by any declaration from a psychological or neurological expert attesting to the need for information in addition to the matters disclosed in Cooper's deposition.

In sum then on this record and subject to the exception we discuss more fully in part III, Cooper may prevent disclosure of confidential communications[3] with her psychiatrist by any person, including her psychiatrist, her health maintenance organization, her attorneys, and her employer or its attorneys.

## III. *Disclosures Necessary to Prevent Harm*

■ Although in general Cooper may prevent disclosure of confidential communications with her psychiatrist, different considerations exist with respect to communications which fall within the exception provided by Evidence Code section 1024. As our Supreme Court has made clear, communications which a psychotherapist has reason to believe give rise to a need to warn others are not privileged, and a patient's express or implied willingness to disclose them has no bearing on a litigant's access to them. (*People v. Wharton, supra,* 53 Cal.3d at pp. 560-561.)

Moreover, a litigant's access to such unprivileged communications is not hampered by the fact that, as here, the potential for harm no longer exists. (*People v. Wharton, supra,* 53 Cal.3d at p. 556; *People v. Gomez, supra,* 134 Cal.App.3d at p. 881; *Mavroudis v. Superior Court, supra,* 102 Cal.App.3d at p. 604.) Rather, the only limitation on disclosure in subsequent proceedings appears to be the constitutional right of privacy and the concomitant requirement the party seeking disclosure show some compelling need for the requested information. (See *People v. Wharton, supra,* 53 Cal.3d at p. 563.)

Kinder makes a convincing argument that she needs to establish not only that Cooper was impaired but also that Trolley was aware of Cooper's impairment. In particular, a general order of the Public Utilities Commission prohibits safety-sensitive employees, such as Cooper, from being on duty while taking medication which might impair the employees' ability to perform their tasks. (See Cal.P.U.C., Gen. Order 143-B, tit. 12, rule 12.03.) Arguably, violation of the order by Trolley would be negligence per se. (See *Langazo v. San Joaquin L. & P. Corp.* (1939) 32 Cal.App.2d 678, 682 [90 P.2d 825]; 6 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, § 821, p. 174.) We also note, notwithstanding Cooper's deposition testimony to the effect she told her supervisors about her condition and treatment, the record does not show Trolley or any of its employees have conceded knowledge about Cooper's medication and any potential impairment to her ability to operate a trolley.

---

[3]Evidence Code section 1012 states in pertinent part: "As used in this article, 'confidential communication between patient and psychotherapist' means information, including information obtained by an examination of the patient . . . and includes a diagnosis made and the advice given by the psychotherapist in the course of that relationship."

With respect to Trolley's knowledge about Cooper's condition, a warning, unlike the actual communications between Cooper and her psychiatrist or even her version of what she told her supervisors, would be highly probative. If in fact Trolley received a warning from a psychological professional, it would be persuasive evidence Trolley was fully aware of Cooper's impairment and its potential consequences. Thus, in light of Kinder's need to establish Trolley knew about Cooper's impaired condition, and in the absence of any concession by Trolley that it knew Cooper's abilities were impaired, Kinder is entitled to disclosure of any warning Trolley received about Cooper. Such disclosure is plainly permissible under Evidence Code section 1024 and is necessary within the meaning of the Constitution.

### IV. *Personnel Records and Employment Information*

■ Finally, we turn to any other information which is in Cooper's personnel file or known to her supervisors. While we have not been directed to any statutory privilege which protects this information from disclosure, it is clear Cooper's personnel records and employment history are within the scope of the protection provided by the state and federal Constitutions. (See *Harding Lawson Associates v. Superior Court, supra,* 10 Cal.App.4th at pp. 9-10; *Board of Trustees v. Superior Court* (1981) 119 Cal.App.3d 516, 530 [174 Cal.Rptr. 160]; see also *Palay v. Superior Court, supra,* 18 Cal.App.4th at p. 931.)

"California courts have generally concluded that the public interest in preserving confidential information outweighs the interest of a private litigant in obtaining the confidential information. [Citation.] . . . .

"[T]he balance will favor privacy for confidential information in third party personnel files unless the litigant can show a compelling need for the particular documents and that the information cannot reasonably be obtained through depositions or from nonconfidential sources. [Citation.] Even when the balance does weigh in favor of disclosure, the scope of disclosure must be narrowly circumscribed. [Citation.]" (*Harding Lawson Associates v. Superior Court, supra,* 10 Cal.App.4th at p. 10.)

At this point in the proceedings, Kinder has not shown a compelling need for complete access to Cooper's personnel files. As we have noted, at her deposition Cooper described the treatment she was receiving at the time of Kinder's injuries and further testified she had informed her supervisors at Trolley about her treatment and medication. Moreover, we have also found Kinder is entitled to disclosure of any warnings Trolley received about Cooper's condition. Thus, it may well be Kinder does not need access to any

other portion of Cooper's otherwise private personnel records to establish her case against Trolley. Accordingly, only if, after Trolley has provided Kinder access to any warnings it has received, there is a genuine factual dispute as to what Trolley knew about Cooper's condition, may Kinder have access to those limited portions of Trolley's personnel records which contain information about Cooper's mental capabilities at the time of the accident. (See *Palay v. Superior Court, supra,* 18 Cal.App.4th at p. 934.)

## DISPOSITION

The petition for a writ of mandate is granted and the trial court is directed to vacate its discovery order and enter a new order consistent with the views expressed herein.

Kremer, P. J., and Nares, J., concurred.