Filed 2/26/13  P. v. Hernandez CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.111.5.**

### IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### SECOND APPELLATE DISTRICT

### DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JOSE FEDERICO HERNANDEZ,<br><br>    Defendant and Appellant. | 2d Crim. No. B238998<br>(Super. Ct. No. GA082218)<br>(Los Angeles County) |

Jose Federico Hernandez appeals his conviction by jury for four counts of lewd conduct on a child under the age of 14 (Pen. Code §288, subd. (a))[1] with multiple victim enhancements (§667.61, subds. (a), (d) & (e)) and three counts of lewd act on a 14 or 15 year-old child 10 years younger than appellant (§ 288, subd. (c)(1)). The trial court sentenced appellant to 45 years to life state prison.   Appellant contends that he was denied a fair trial because defense counsel was not permitted to cross-examine a victim about what she told her psychotherapist.  We affirm.  (Evid. Code §§ 352, 1012, 1014.)

*Facts and Procedural History*

On January 10, 2011, the Pasadena Police Department investigated a report that appellant had molested his stepdaughters, M. and T.  M. told the police that, in 2005 when she was 10 years old, appellant called her into his bedroom, sat her on

---

[1] All statutory references are to the Penal Code unless otherwise stated.

his lap, and put his hand down her pants. Appellant inserted his finger into M.'s vagina and moved it around. Exposing himself, appellant grabbed M. and tried to get her to touch his penis.

In 2006, appellant dropped M.'s mother off at work, stopped the car, and tried to put his hand down M.'s pants. Appellant asked if she "wanted to touch his cock" and tried to get M. to touch his penis. M. ran into the house crying and asked her sisters what "cock" meant.

Sometime between 2007 and December 2010, M. told her mother about the molestation and pled with mother not to do anything because appellant had threatened to call immigration. In January 2001, mother told a school counselor that M. had been molested.

T., an older sister, was molested in 2000 at age 11. Appellant drove T. home from her father's funeral, stopped the car, kissed her and put his tongue inside her mouth.

After the children moved to appellant's house, appellant pulled T.'s pajamas down and digitally penetrated her vagina, moving his finger up and down. T. was too scared to scream and heeded appellant's warning not to say anything. Appellant continued to molest T. two or three times a week between the ages of 13 and 15.

T.'s and M's cousin, F., testified that appellant put his arm around her, touched her thigh, and tugged on her underwear. F was 11 years old. F. tried to get away but appellant wrapped his arms around her, kissed her three or four times, and said "You're so beautiful. I bet a lot of boys like you." Appellant pressed his erect penis against F.'s stomach and kissed her neck and lip. F. was hysterical, called her mother, and reported the incident to the police on July 30, 2009.

*Impeachment Evidence*

Appellant contends that the trial court erred in not permitting counsel to question M. about what was said or not said in psychotherapy. On cross-examination,

2

M. was asked if she was depressed after her father died.  M. replied, "Yeah, they sent me to a bunch of therapists because--"

The prosecution requested a sidebar conference.  Defense counsel argued that M. was seeing a therapist and, assuming M. told the therapist about the molestation, it had to be reported under the Child Abuse and Neglect Reporting Act. (§ 11164 et seq.; see *People v. Stritzinger* (1983) 34 Cal.3d 505, 512 [child abuse reporting obligation takes precedence over the psychotherapist-patient privilege].) Citing Evidence Code section 1012, the prosecution argued that confidential communications between a patient and his/her psychotherapist are privileged.  Defense counsel argued that M. waived the privilege "by telling people she's been seeing therapists."

The trial court ruled that M.'s communications with her therapist were privileged and "under 352 . . . it's just too speculative. "  Appellant was attempting to ask "about what was not said during that communication, and that goes into what the nature of the communications were.  And that just strikes me as trying to get into what the -- what is otherwise a privileged communication."

*Psychotherapist-Patient Privilege*

In California, the psychotherapist-patient privilege is broadly construed to bar the disclosure of confidential communications between patient and psychotherapist. (*People v. Stritzinger, supra,* 34 Cal.3d at p. 511.)  M.'s statement that, "Yeah, they sent me to a bunch of therapists" did not waive the privilege. (*Roberts v. Superior Court* (1973) 9 Cal.3d 330, 340.)

Our Supreme Court has " 'made it clear that the mere disclosure of the *existence* of the psychotherapist-patient relationship does not reveal a significant part of the communication and thus does not constitute a waiver.'"  (*Ibid.*)  Even when a patient reveals the *purpose* of psychiatric treatment, no waiver of the privilege occurs. (*Ibid.*)  There is a "vast difference between disclosure of a general description of the object of . . . psychotherapeutic treatment, and the disclosure of all or a part of the

3

patient's actual communications during psychotherapy." (*Ibid., fn.3;* see e.g., *San Diego Trolley, Inc. v. Superior Court* (2001) 87 Cal.App.4th 1083, 1092-1093.)

The defense theory was that if M. did not tell her therapist about the molestation, the jury could infer that no molestation occurred. The trial court reasonably concluded that such an inquiry, "by definition, goes into the nature of the communication. . . [Y]ou have to ask about what was talked about to show that there was no discussion of molestation."

Although the prosecution could not assert the privilege on behalf of the victim, the existence of the privilege was properly brought to the trial court's attention. (See *People v. Superior Court* (*Humberto S.*) (2008) 43 Cal.4th 737, 751-752.) Evidence Code section 916, subdivision (a) provides that a trial court, on its own motion or the motion of a party, "shall exclude information that is subject to a claim of privilege under this division if: [¶] . . . [¶] (2) There is *no party to the proceeding* who is a person authorized to claim the privilege." (Emphasis added.)

Pursuant to Evidence Code section 352 a trial court has broad discretion in determining whether the probative value of specific evidence is outweighed by concerns regarding undue prejudice, confusion, or consumption of time. (*People v. Rodrigues* (1994) 8 Cal.4th 1060, 1124.) No abuse of discretion occurred here. The trial court reasonably concluded that questions about what M. said or did not say in psychotherapy would cause an undue consumption of time, create a substantial danger of undue prejudice, and confuse or mislead the jury.

*Sixth Amendment*

Appellant's assertion that his Sixth Amendment right to confront and cross-examine witnesses was violated is without merit. The argument "fails to account for the general rule that the application of the ordinary rules of evidence under state law does not violate a criminal defendant's federal constitutional right to present a defense. . . . [Citation.]" (*People v. Abilez* (2007) 41 Cal.4th 472, 503; see *Delaware v. Van Arsdall* (1986) 475 U.S. 673, 679 [89 L.Ed.2d 674, 683]; *People v. Cornwell*

4

(2005) 37 Cal.4th 50, 82.) Trial courts have wide latitude in restricting cross-examination on " 'collateral credibility issues.' [Citation.]" (*People v. Ayala* (2000) 23 Cal.4th 225, 301.) A constitutional violation occurs only if a reasonable jury might have received a significantly different impression of the witness's credibility if the excluded cross-examination had been permitted. (*People v. Quartermain* (1997) 16 Cal.4th 600, 623-624.)

Assuming that the trial court erred in limiting the cross-examination of M., the error was harmless under any standard of review. (*Chapman v. California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 710]; *People v. Watson* (1956) 46 Cal.2d 818,. 836.) M.'s testimony was corroborated by her sister (T.), her cousin (F.), other family members, and the police investigation. The molestation of M. was strikingly similar to the other molestations: appellant targeted young girls (10 to 11 years old) in the family, abused his trust and authority, and carried out the sexual assaults at home or in his vehicle when the victim was left in his care. M. feared that appellant would turn the family over to immigration if she said anything and feared that family members would blame her for any punitive action if the matter was reported to the police.[2]

Appellant makes no showing that a reasonable jury might have received a significantly different impression of M.'s credibility had the trial court permitted counsel to question M. about what was said or not said in psychotherapy. (*People v.*

_____

[2] Appellant complains that Doctor Mitchell Eisen, a forensic psychologist, testified about Child Sexual Abuse Accommodation Syndrome and why some child victims do not report a molestation. The trial court instructed that "Dr. Eisen's testimony about child sexual abuse accommodation syndrome is not evidence that the defendant committed any of the crimes that are charged against him. You may consider this evidence only in deciding whether or not each of the victim's conduct was not consistent with the conduct of someone who has been molested in evaluating the believability of her testimony." (CALCRIM 1193.) On review, it is presumed that the jury understood and followed the instruction. (*People v. Coffman and Marlow* (2004) 34 Cal.4th 1, 83.)

*Quartermain, supra,* 16 Cal.4th at p. 624.) "[T]he Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense may wish. [Citation.]" (*Delaware v. Fensterer* (1985) 474 U.S. 15, 20 [88 L.Ed.2d 15, 20].)

The judgment is affirmed.

NOT TO BE PUBLISHED.


YEGAN, J.

We concur:


GILBERT, P.J.


PERREN, J.

Darrell Mavis, Judge

Superior Court County of Ventura

_____

Vanessa Place, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Scott A. Taryle, Supervising Deputy Attorney General, Kimberly J. Baker-Guillemet, Deputy Attorney General, for Plaintiff and Respondent.