Opinion
 

 HANLON, J.
 

 In this writ proceeding, we review an order granting discovery of the psychiatric records of a defendant to his codefendants.
 

 I
 

 Petitioner Brian Nielsen and codefendants David Danielson and Gary Danielson are jointly charged with the murder of Richard Holman and the special circumstances that the murder was committed in the course of a burglary and robbery. Petitioner is charged with the actual killing. The People are seeking the death penalty as to both petitioner and David Daniel-son but not as to Gary Danielson.
 

 According to her testimony before the grand jury in 1995, Barbara Holman answered the doorbell at her residence in Napa on March 30, 1990, at about 8 p.m. Three men, strangers to her, were at the door. One of the men asked for her husband, Dr. Holman, and when admitted asked to use the telephone. This man repeatedly stabbed Dr. Holman and directed a second suspect to tie up Mrs. Holman. The third suspect was in a bedroom of the house where he was apparently filling a pillow slip with items belonging to the Holmans.
 

 Petitioner and the Danielsons were not implicated in these events until 1993 when Renee Olivera, who had married petitioner in 1990 and divorced him in 1993, contacted the authorities. As a result of the information she provided, Barbara Holman was shown photographs of the three men and identified petitioner as the man who stabbed her husband.
 

 On July 11, 1996, Gary Danielson subpoenaed petitioner’s psychiatric records from the Shasta County Mental Health Department. The subpoena requested all documents “relating to any and all counseling, testing, medical treatment (including treatment for alcohol and substance abuse), or referrals for counseling, testing, or medical treatment rendered by the . . . facility or any representative thereof, of Brian Nielson
 
 [sic]
 
 . . . including but not limited to correspondence, notes, memoranda, statements, reports, photographs, and any communications of any nature or type.” In an affidavit in
 
 *1153
 
 support of the subpoena, the attorney for Gary Danielson stated that he was informed and believed that either the prosecution or petitioner’s defense team will call petitioner as a witness in the guilt or penalty phases of the case. He based this on the belief that petitioner would enter a deal with the prosecution to testify against the codefendants at the guilt phase or might be compelled to testify at the penalty phase to save his life. He was also of the belief that petitioner’s testimony at any penalty phase would include petitioner’s claim that David Danielson committed a Solano County homicide for which petitioner was convicted.
 
 [1]
 
 Finally, he expressed a belief that information concerning petitioner’s ability to perceive, recollect and communicate as well as his honesty and veracity would be significant and critical issues to which the required materials would be relevant as they would be relevant to matters of intent and state of mind.
 

 The affidavit cited the cases of
 
 People
 
 v.
 
 Reber
 
 (1986) 177 Cal.App.3d 523 [223 Cal.Rptr. 139] and
 
 Davis
 
 v.
 
 Alaska
 
 (1974) 415 U.S. 308 [94 S.Ct. 1105, 39 L.Ed.2d 347] as authority for balancing defendant’s rights to a defense against the privileges which might adhere to the materials sought in determining whether the materials are discoverable.
 

 Petitioner orally moved to quash the subpoena on the ground, among others, that the records were protected by the psychotherapist-patient privilege. David Danielson orally moved to join in the subpoena. The motion to quash was considered by the court on March 6, 1997. On that date respondent court heard in camera from all parties separately as to their positions. The court then denied the motion to quash and, again in camera with no parties or attorneys present, explained its reasoning.
 

 Petitioner challenged this ruling by the instant petition for writ of mandate. We issued an alternative writ to which both Gary and David Danielson have filed returns.
 

 II
 

 The psychotherapist-patient privilege invoked here by petitioner is found in Evidence Code section 1014, which provides that “. . . the patient, whether or not a party, has a privilege to refuse to disclose, and to prevent another from disclosing, a confidential communication between patient and psychotherapist . . . .” “Confidential communications are protected ‘to encourage those who may pose a threat to themselves or to others, because of some mental or emotional disturbance, to seek professional assistance.’ [Citation.] The privilege reflects a patient’s constitutional right
 
 *1154
 
 to privacy [citation] and is broadly construed in favor of the patient. [Citations.] The psychotherapist-client privilege is broader than other privileges. Unlike the physician-patient privilege, for example, the psychotherapist-patient privilege can be invoked in a criminal proceeding. [Citations.]”
 
 (People
 
 v.
 
 John B.
 
 (1987) 192 Cal.App.3d 1073, 1076-1077 [237 Cal.Rptr. 659].)
 

 The concept of balancing the interest in protecting the psychotherapist-patient privilege against the needs of the party seeking the information does not ordinarily apply to the privilege. As explained at its enactment: “Although it is recognized that the granting of the privilege may operate in particular cases to withhold relevant information, the interests of society will be better served if psychiatrists are able to assure patients that their confidences will be protected.” (Sen. Com. on Judiciary, com., reprinted at 29B West’s Ann. Evid. Code pt. 3 (1995 ed.) foil. § 1014, p. 333.)
 

 In the line of cases cited in the affidavit in support of the subpoena, the courts have recognized that the psychiatric-patient privilege may have to give way to a criminal defendant’s right to confront witnesses under the Sixth Amendment of the United States Constitution. In
 
 People
 
 v.
 
 Reber, supra, 111
 
 Cal.App.3d 523 (hereafter
 
 Reber),
 
 the defendants had been charged with various sexual offenses against one victim who was developmentally handicapped and retarded and against a second victim who suffered from chronic mental illness.
 
 (Id.
 
 at p. 527.) The issue presented to the Court of Appeal was whether and to what extent the psychiatric records of these victims could be made available to defendants.
 

 The defendants in
 
 Reber
 
 relied primarily on
 
 Davis
 
 v.
 
 Alaska, supra,
 
 415 U.S. 308. As explained in the
 
 Reber
 
 opinion: “In
 
 Davis,
 
 the prosecution obtained a protective order preventing the defense from cross-examining the key prosecution witness concerning his probation status. The order was based on an Alaska statute protecting the anonymity of juvenile offenders. Reversing the conviction, the United States Supreme Court held that the right of confrontation was paramount to the state’s policy of protecting anonymity of the juvenile offender. Whatever temporary embarrassment might result to the witness and his family by disclosure of his juvenile record was outweighed by the defendant’s ‘right to probe into the influence of possible bias in the testimony of a crucial identification witness.’ [Citation.] The high court reasoned that the Sixth Amendment guarantee that an accused in a criminal prosecution ‘ “be confronted with the witnesses against him” ’ means more than confronting the witnesses physically. The primary right secured by confrontation is cross-examination. [Citation.] ‘Cross-examination is the principal means by which the believability of a witness and
 
 *1155
 
 the truth of his testimony are tested. Subject always to the broad discretion of a trial judge to preclude repetitive and unduly harassing interrogation, the cross-examiner is not only permitted to delve into the witness’ story to test the witness’ perceptions and memory, but the cross-examiner has traditionally been allowed to impeach, i.e., discredit the witness.’ [Citation.] ‘While counsel was permitted to ask [the witness]
 
 whether
 
 he was biased, counsel was unable to make a record from which to argue
 
 why
 
 [the witness] might have been biased
 
 or
 
 otherwise lacked that degree of impartiality expected of a witness at trial.’ [Citation.]”
 
 (Reber, supra, 177
 
 Cal.App.3d at pp. 529-530.)
 

 The
 
 Reber
 
 court applied the principles enunciated in the
 
 Davis
 
 decision to the case before it and concluded “that adherence to a statutory privilege of confidentiality must give way to pretrial access when it would deprive a defendant of the constitutional right of confrontation and cross-examination.”
 
 (Reber, supra, 177
 
 Cal.App.3d at p. 531.) The court went on to hold that defendants must initially show good cause for the discovery and, given such a showing, the trial court must examine the records in camera to determine “whether defendants’ fundamental right [to confrontation] could be adequately protected by access to nonprivileged material and if not, the extent to which access to privileged material was necessary for that purpose.”
 
 (Id.
 
 at p. 532.) “The privilege may be overridden only if and to the extent necessary to ensure defendants’ constitutional rights of confrontation.” (I
 
 bid.
 
 see also
 
 People
 
 v.
 
 Caplan
 
 (1987) 193 Cal.App.3d 543 [238 Cal.Rptr. 478];
 
 People
 
 v.
 
 Boyette
 
 (1988) 201 Cal.App.3d 1527 [247 Cal.Rptr. 795];
 
 People
 
 v.
 
 Pack
 
 (1988) 201 Cal.App.3d 679 [248 Cal.Rptr. 240].) “[T]o obtain a
 
 Reber
 
 review, a defendant must establish ‘good cause’ for doing so, which in this context means the defendant must describe the records sought ‘with reasonable specificity’ and provide a ‘plausible justification’ for producing them. [Citation.]”
 
 (People
 
 v.
 
 Dancer
 
 (1996) 45 Cal.App.4th 1677, 1691 [53 Cal.Rptr.2d 282].)
 

 Respondent court was following the procedures set forth in
 
 Reber.
 
 The court examined the showing of good cause for discovery and examined the records in camera. While the court explained the aspect of the material which it considered necessary to the codefendant’s case, it did not isolate this material for discovery but denied the motion to quash the subpoena in its entirety subject to a carefully crafted protective order against disclosure or the use of the material without further court review.
 

 However, we conclude that the court’s order suffers from a more fundamental defect than the failure to narrow the discovery as to relevancy. The
 
 Reber
 
 analysis rested upon the defendant’s right to confront prosecution
 
 *1156
 
 witnesses. In keeping with this analysis all the cases cited above, the progeny of
 
 Reber,
 
 involve prosecution witnesses. In the instant situation, petitioner is not a part of the prosecution case. Any possibility that petitioner will testify at any point in the case is entirely speculative. Furthermore, petitioner cannot be required to indicate his decision as to whether he will testify in order to litigate the motion to quash.
 
 [2]
 
 (See
 
 Brooks
 
 v.
 
 Tennessee
 
 (1972) 406 U.S. 605 [92 S.Ct. 1891, 32 L.Ed.2d 358].)
 

 Respondent court’s ruling was not based upon the right of the codefendants to confront the government witnesses. It was based rather on the codefendants’ right to defend themselves by the use of potentially exculpatory evidence. A defendant has a due process right to all substantial material evidence favorable to an accused which is known to the prosecution. “ ‘That duty exists regardless of whether there has been a request for such evidence [citation], and irrespective of whether the suppression was intentional or inadvertent.’ [Citation.]”
 
 (Izazaga
 
 v.
 
 Superior Court
 
 (1991) 54 Cal.3d 356, 378 [285 Cal.Rptr. 231, 815 P.2d 304].) The duty is the duty of the prosecution not the duty of codefendants. As petitioner points out, nowhere in the discovery statutes or in the cases construing them is the requirement that one defendant be obligated to provide “materially exculpatory” evidence to a codefendant, much less that one defendant provide privileged records to a codefendant.
 
 [3]
 

 Ill
 

 The Danielsons contend that, at least in the possible penalty phase of the joint trial, they will be placed in the position of de facto prosecutors because of the possibility that the prosecutor will seek to show that petitioner was responsible for the Cortez murder and petitioner will attempt to blame that murder upon David Danielson. We are not persuaded. Codefendants are often at odds in their arguments but that does not mean that they shift to the role of de facto prosecutors at such times with the procedural advantages that may adhere to the People. Further, the Supreme Court has noted that “[a]s a general matter at least, the privilege appears paramount to prosecution” and “does not deny due process.”
 
 (Menendez
 
 v.
 
 Superior Court
 
 (1992) 3 Cal.4th 435, 456, fn. 18 [11 Cal.Rptr.2d 92, 834 P.2d 786].)
 

 
 *1157
 
 IV
 

 In their returns to the alternative writ, codefendants contend that Evidence Code section 1024, commonly referred to as the “dangerous patient” exception to the psychotherapist privilege, applies to the records they subpoenaed. Codefendants did not raise this exception in their affidavits in support of the subpoena. We have examined the transcripts of the in camera hearings. Codefendants did not object to the motion to quash the subpoena on grounds that the “dangerous patient” exception applied and the court did not make a finding that the exception applied. We, therefore, do not consider it appropriate to consider the issue here.
 

 V
 

 For the reasons stated above, we conclude that respondent court erred in denying the motion to quash the subpoena. Let a peremptory writ of mandate issue requiring respondent court to grant the motion to quash.
 

 Anderson, P. J., and Reardon, J., concurred.
 

 [1]
 

 On August 13, 1996, petitioner was convicted of the 1994 murder of Corazon Cortez.
 

 [2]
 

 We do not foreclose the possibility that codefendants may be entitled to review petitioner’s psychiatric records if petitioner chooses to testify. If and when this choice is made, the trial court may make the determination required by
 
 Reber.
 

 [3]
 

 We have made a national reference search to see if this issue has been decided by any court based on a similar statutory privilege scheme, but have been unable to locate a single case.