Filed 11/27/19

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| MASON ROBERT FISH, | D076060 |
| Petitioner, | |
| v. | (San Diego County Super. Ct. No. CN396324) |
| THE SUPERIOR COURT OF SAN DIEGO COUNTY, | |
| Respondent; | |
| THE PEOPLE, | |
| Real Party in Interest. | |

ORIGINAL PROCEEDING in prohibition after the superior court denied petitioner's motion to quash. Harry M. Elias, Judge. Petition granted.

Law Offices of Mark W. Fredrick, Mark W. Fredrick; and Courtney L. Cumming for Petitioner.

No appearance for Respondent.

Summer Stephan, District Attorney, Mark A. Amador, Linh Lam, David Uyar and Samantha Begovich, Deputy District Attorneys, for Real Party in Interest.

Petitioner Mason Fish was involved in a fatal motor vehicle collision and thereafter charged with (among other offenses) three counts of gross vehicular manslaughter while intoxicated. (Pen. Code, § 191.5, subd. (a)). Based on Fish's statements to law enforcement officers after the collision that he was under the care of a psychotherapist who had prescribed him certain antidepressant and antipsychotic medications, the prosecution subpoenaed the psychotherapist's (and his medical group's) treatment records. Fish moved to quash the subpoenas on the basis they sought information protected by the psychotherapist-patient privilege. (Evid. Code, §1014.)[1] The prosecution countered that Fish had, through his disclosures to law enforcement officers, waived this privilege. Respondent superior court (the trial court) agreed with the prosecution. Accordingly, the court denied Fish's motion and indicated it would review the psychotherapist's treatment records in camera to determine if Fish and his therapist discussed whether the medications might affect Fish's driving.

Contending the trial court erred in finding he waived the psychotherapist-patient privilege, Fish petitions for a writ preventing the trial court from reviewing his psychotherapy treatment records, and requiring the trial court to grant his motion to quash the subpoenas. For reasons we will explain, we will issue the requested writs.

FACTUAL AND PROCEDURAL BACKGROUND

Fish was driving a vehicle involved in a tragic collision in Oceanside on February 5, 2019. Three occupants of the other vehicle were killed, and three were hospitalized with severe injuries. Fish told responding law enforcement officers that he was under the

---

1    Further undesignated statutory references are to the Evidence Code.

2

care of a psychotherapist who had prescribed him antidepressant and antipsychotic medications. Fish told the officers he had last taken the antidepressant that morning, and the antipsychotic two weeks ago. Fish also stated he had begun, or was about to begin, a ketamine infusion treatment.[2]

A few days after the accident, the District Attorney filed a seven-count criminal complaint against Fish.[3] Fish was arraigned and pled not guilty.

About one month later, the District Attorney served subpoenas on the psychotherapist and his medical group seeking "[a]ny and all medical records for" Fish from April 24, 2017, through the date of the subpoenas (March 6, 2019).[4]

Fish moved to quash the subpoenas, arguing they sought information protected by the psychotherapist-patient privilege. Fish maintained that his disclosure to the law

[2] Real party in interest the People, represented by the San Diego County District Attorney (the District Attorney), include in their return to Fish's petition numerous additional statements he allegedly made to the officers during their interview. The return cites to the District Attorney's opposition to Fish's motion to quash, but does not cite to any *evidence* in the record. We therefore do not include these additional alleged facts, which, in any event, are not necessary to our disposition of Fish's petition.

[3] The complaint alleged the following offenses: gross vehicular manslaughter while intoxicated (Pen. Code, § 191.5, subd. (a); counts 1-3); driving under the influence of drugs causing injury (Veh. Code, § 23153, subd. (f); count 4); possession of a controlled substance (Health & Saf. Code, § 11350, subd. (a); count 5); driving with a suspended or revoked license (Veh. Code, § 14601.1; count 6); and driving without a valid driver's license (Veh. Code, § 12500, subd. (a); count 7). The complaint also alleged various sentence enhancements.

[4] Specifically, the subpoenas sought the following evidence: "Any and all medical records for the following patient: MASON FISH DOB: [redacted], for the timeframe: April 24, 2017 to the present. Including, but not limited to: History and physical, all medical reports, doctor's notes, nurse's notes, trauma notes, diagnos[is] reports, surgery reports, medication records, charts, progress notes, discharge summary and any other reports related to medical treatment."

enforcement officers of the existence of his psychotherapist-patient relationship, diagnoses, and prescriptions did not waive the privilege.

The District Attorney filed an opposition, arguing Fish had waived the privilege. The prosecution also asserted that because it had to prove Fish "acted in a grossly negligent manner," it had a "compelling" need for evidence showing Fish and his therapist had discussed the medications' side effects, interactions, or impacts on his driving.

At the hearing on Fish's motion to quash, the trial court stated it had received, but not yet opened, a manila envelope labeled "defendant's psychiatric records." After hearing argument, the court denied Fish's motion, finding—at least for purposes of conducting an in camera inspection—that Fish had waived the psychotherapist-patient privilege "as relates to what medications [he] was taking and what advice as it relates specifically to those medications, if any, was given." Other than that, the court found Fish's communications with his therapist were privileged.

Fish asked the trial court not to review the materials until he had the opportunity to pursue a writ. The trial court agreed.

After Fish filed the instant petition and the District Attorney filed an informal response, we issued an order to show cause why we should not grant the requested relief. The District Attorney filed a formal return, and Fish filed a reply.

### DISCUSSION

Fish contends the trial court erred by finding he waived his psychotherapist-patient privilege by disclosing to law enforcement officers that he was seeing a psychotherapist

4

who had prescribed him antidepressant and antipsychotic medications. The District Attorney disagrees, and further contends it has a compelling prosecutorial need for the information that outweighs Fish's privacy interests. We conclude Fish's disclosures to law enforcement officers did not waive his privilege, and there is no legal basis on which the District Attorney's claimed compelling prosecutorial need warrants an invasion of Fish's statutory privilege.

## I. *Relevant Legal Principles*

Confidential communications between a psychotherapist and patient are privileged. (§ 1014; *Story v. Superior Court* (2003) 109 Cal.App.4th 1007, 1014 (*Story*); § 917 [communications "in the course of the . . . psychotherapist-patient . . . relationship" are "presumed to have been made in confidence"].) Section 1014 provides in part that a "patient, whether or not a party, has a privilege to refuse to disclose, and to prevent another from disclosing, a confidential communication between patient and psychotherapist." "The psychotherapist-patient privilege has been recognized as an aspect of the patient's constitutional right to privacy." (*People v. Stritzinger* (1983) 34 Cal.3d 505, 511 (*Stritzinger*).)

The psychotherapist-patient privilege rests on the premise " 'that an environment of confidentiality of treatment is vitally important to the successful operation of psychotherapy.' " (*Story*, *supra*, 109 Cal.App.4th at p. 1014.) The California Supreme Court has "recognized 'the public interest in supporting effective treatment of mental illness and . . . the consequent public importance of safeguarding the confidential character of psychotherapeutic communication.' [Citations.] 'Psychoanalysis and

psychotherapy are dependent upon the fullest revelation of the most intimate and embarrassing details of the patient's life . . . . Unless a patient . . . is assured that such information can and will be held in utmost confidence, he will be reluctant to make the full disclosure upon which diagnosis and treatment . . . depends.' " (*People v. Wharton* (1991) 53 Cal.3d 522, 555 (*Wharton*), quoting Sen. Judiciary Com. com., 29B West's Ann. Evid. Code (1966 ed.) § 1014, p. 621.)

The psychotherapist-patient privilege is "broader than other privileges. Unlike the physician-patient privilege, for example, the psychotherapist-patient privilege can be invoked in a criminal proceeding.' " (*Nielsen v. Superior Court* (1997) 55 Cal.App.4th 1150, 1154 (*Nielsen*); *San Diego Trolley, Inc. v. Superior Court* (2001) 87 Cal.App.4th 1083, 1091 (*San Diego Trolley*) ["unlike the physician-patient privilege, the psychotherapist-patient privilege is not subject to a good cause exception in personal injury actions"]; *Wharton*, *supra*, 53 Cal.3d at pp. 551-552.) "The privilege is also considered 'paramount to prosecution,' generally outweighing the People's interest in successful prosecutions . . . ." (*Story*, at p. 1014; *Menendez v. Superior Court* (1992) 3 Cal.4th 435, 456-457, fn. 18 (*Menendez*).)

"Thus, for policy reasons the psychotherapist-patient privilege is broadly construed in favor of the patient, while exceptions to the privilege are narrowly construed." (*Story*, *supra*, 109 Cal.App.4th at p. 1014.)

"Where the psychotherapist-patient privilege is claimed as a bar to disclosure, the claimant has the initial burden of proving the preliminary facts to show the privilege applies." (*Story*, *supra*, 109 Cal.App.4th at p. 1014.) " 'Preliminary facts' means the

6

existence of a psychotherapist-patient relationship, 'that is, that the person [the claimant] consulted was a " 'psychotherapist' " within the meaning of . . . section 1010, and [the claimant] was a " 'patient' " within the meaning of . . . section 1011.' " (*Story*, at p. 1014; §§ 1010 [" 'psychotherapist' " includes a licensed psychologist, or a medical doctor "who devotes, or is reasonably believed by the patient to devote, a substantial portion of his or her time to the practice of psychiatry"], 1011 [" 'patient' means a person who consults a psychotherapist . . . for the purpose of securing a diagnosis or preventive, palliative, or curative treatment of his mental or emotional condition"].)

"Despite its broad and protective nature, the psychotherapist-patient privilege is not absolute." (*Story*, *supra*, 109 Cal.App.4th at p. 1014.) "Once the claimant establishes the preliminary facts of a psychotherapist-patient relationship, the burden of proof shifts to the opponent of the privilege" to either (1) "rebut the statutory presumption of confidentiality" that attaches to psychotherapist-patient communications, (2) "show that the privilege has been waived under section 912," or (3) show "that the material sought falls within one of the exceptions to the psychotherapist-patient privilege codified at sections 1016 through 1027." (*Story*, at p. 1015; see, e.g., §§ 1016 [patient-litigant exception applies when "an issue concerning the mental or emotional condition of the patient . . . has been tendered by [¶] . . . the patient"]), 1024 [dangerous-patient exception applies "if the psychotherapist has reasonable cause to believe that the patient is in such mental or emotional condition as to be dangerous to himself or to the person or property of another"].)

7

Regarding waiver, section 912 provides that "the right of any person to claim [the] . . . psychotherapist-patient privilege . . . is waived with respect to a communication protected by the privilege if any holder of the privilege, without coercion, has disclosed a *significant part* of the communication or has consented to disclosure made by anyone." (Italics added.) "What constitutes a significant part of the communication is a matter of judicial interpretation; however, the scope of the waiver should be determined primarily by reference to the purpose of the privilege." (*Transamerica Title Ins. Co. v. Superior Court* (1987) 188 Cal.App.3d 1047, 1052.)

"The waiver of an important right must be a voluntary and knowing act done with sufficient awareness of the relevant circumstances and likely consequences." (*Roberts v. Superior Court* (1973) 9 Cal.3d 330, 343 (*Roberts*).) "Thus, any waiver must be narrowly construed and limited to matters 'as to which, based upon [the patient's] disclosures, it can reasonably be said [the patient] no longer retains a privacy interest.' " (*San Diego Trolley*, *supra*, 87 Cal.App.4th at p. 1092.)

Even when there has been a "waiver of a statutory privilege, a patient retains the more general right to privacy protected by the state and federal Constitutions." (*San Diego Trolley*, *supra*, 87 Cal.App.4th at p. 1092.)

"A trial court's discovery rulings are reviewed for abuse of discretion." (*People v. Mora and Rangel* (2018) 5 Cal.5th 442, 466.)

## II. *Analysis*

The undisputed facts show the psychotherapist-patient privilege applies at the outset because the District Attorney is seeking to discover presumptively confidential

communications between Fish and his psychotherapist. (*Story*, *supra*, 109 Cal.App.4th at p. 1014; §§ 917, 1010, 1011.) Thus, Fish has met his initial burden of proof, and the burden shifts to the District Attorney to show the requested materials fall outside the presumption of confidentiality, fall within a statutory exception to the privilege, or that Fish waived the privilege by disclosing a significant part of his communications with his psychotherapist. (*Story*, at p. 1015.)

The District Attorney does not contend that the requested materials fall outside the presumption of confidentially or within any statutory exception to the privilege (such as the dangerous-patient exception). Instead, the District Attorney argues the trial court correctly concluded Fish waived the privilege by disclosing to responding law enforcement officers that his psychotherapist prescribed him certain medications for certain conditions. Alternatively, the District Attorney maintains its compelling prosecutorial need for the requested materials outweighs Fish's countervailing privacy interest in the material. We disagree in both respects.

The fact that Fish disclosed to law enforcement officers that his psychotherapist had prescribed certain antidepressant and antipsychotic medications is legally insufficient to waive the privilege that attaches to Fish's communications with his therapist about those prescriptions and diagnoses. Our court reached a similar conclusion in *San Diego Trolley*, *supra*, 87 Cal.App.4th 1083, in which the plaintiff, who sustained severe injuries when she was struck by a trolley while crossing the track, sought to discover psychotherapy records pertaining to the allegedly negligent trolley operator. (*Id.* at pp. 1088-1089.) The plaintiff argued the trolley operator waived her psychotherapist-patient

9

privilege by disclosing during a deposition that "she was being treated for . . . anxiety by a psychiatrist, that at the time of [the plaintiff]'s injury she was taking three prescription medications (50 mg. Paxil, .5 mg. Risperdal and .5 mg. Klonopin), and that she had informed her supervisors about her treatment and medication." (*Id.* at p. 1088.) The operator explained she sought this treatment and filed a stress-related workers' compensation claim because "she had begun suffering anxiety attacks . . . following the murder of a passenger on a trolley she was operating." (*Id.* at p. 1088.) The trial court found the operator had waived her privilege, and ordered the operator's psychiatrist to appear for a deposition. (*Id.* at p. 1089.) The operator sought a writ of mandate directing the trial court to vacate its order, and our court issued the requested writ. (*Id.* at pp. 1089, 1098.)

Our court concluded the trolley operator had not "disclos[ed] any significant part of her communications with her psychiatrist" for purposes of waiving the privilege because she had "only disclosed the fact that she was being treated for anxiety by a psychiatrist and the medications the psychiatrist had prescribed." (*San Diego Trolley*, *supra*, 87 Cal.App.4th at p. 1094, citing *Roberts*, *supra*, 9 Cal.3d at p. 340.) We explained that this conclusion flowed logically from our high court's guidance:

> "[T]he Supreme Court has 'made it clear that the mere disclosure of the *existence* of the psychotherapist-patient relationship does not reveal a significant part of the communication and thus does not constitute a waiver.' [Citation.] Even when a patient has revealed the *purpose* of psychiatric treatment, no waiver of the privilege occurs. [Citation.] 'There is a vast difference between disclosure of a general description of the object of . . . psychotherapeutic treatment, and the disclosure of all or a part of the patient's actual communications during psychotherapy.' " (*San Diego Trolley*,

10

*supra*, 87 Cal.App.4th at pp. 1092-1093, quoting *Roberts*, *supra*, 9 Cal.3d at p. 340.)

We find the reasoning of *San Diego Trolley* dispositive. Like the trolley operator in that case, Fish disclosed only that his psychotherapist had prescribed him certain antidepressant and antipsychotic medications. This was not a "significant part of [his] communications with" his psychotherapist for purposes of waiving the psychotherapist-patient privilege. (*San Diego Trolley*, *supra*, 87 Cal.App.4th at p. 1094; see *Roberts*, *supra*, 9 Cal.3d at p. 340.)

Despite the fact Fish extensively discussed *this court's* decision in *San Diego Trolley* in his petition, the District Attorney does not address it *at all* in its return. Instead, the District Attorney relies almost exclusively on *Jones v. Superior Court* (1981) 119 Cal.App.3d 534, in which the plaintiff's mother asserted the physician-patient privilege in response to third-party discovery arising from the daughter's lawsuit against pharmaceutical companies for birth defects allegedly caused by the mother's ingestion of the drug DES while pregnant. (*Id.* at pp. 540-541.) The Court of Appeal affirmed the trial court's determination that the plaintiff's mother had waived her physician-patient privilege during her deposition when she "answered questions about her medical history before and up to the time of [the] plaintiff's birth" (*id.* at p. 541); "*recount[ed] conversations with her physician*, *pharmacist*, husband, and others regarding her pregnancy and the administration of DES" (*ibid.*, italics added); and remained "willing to respond to questions about her medical history prior to [the] plaintiff's birth" (*id.* at p. 542).

11

*Jones* is readily distinguishable.  It involved the *physician*-patient privilege, which is narrower than the *psychotherapist*-patient privilege at issue here.  (*Nielsen*, *supra*, 55 Cal.App.4th at p. 1154; *San Diego Trolley*, *supra*, 87 Cal.App.4th at p. 1091; *Wharton*, *supra*, 53 Cal.3d at pp. 551-552.)  And, more significantly, the *Jones* plaintiff's mother disclosed significantly more information about her physician-patient relationship— including "conversations with her physician [and] pharmacist" (*Jones*, *supra*, 119 Cal.App.3d at p. 541)—than Fish disclosed about his psychotherapist-patient relationship.

Because Fish's disclosures were legally insufficient under our court's precedent to waive his psychotherapist-patient privilege, the trial court erred in concluding otherwise.

As an alternative to its waiver theory, the District Attorney argues it is entitled to discover Fish's psychotherapy records because the prosecution has a compelling need for the information to effectively prosecute Fish for serious driving-under-the-influence offenses.  We are not persuaded.

The California Supreme Court has held that when no exception to the privilege has been established and there has been no waiver, the state's claimed compelling need for the information to aid criminal prosecution does not justify invasion of the privilege:

> "As a general matter at least, the privilege appears paramount to prosecution.  Certainly, the Legislature is of that view.  It has created a so-called 'criminal proceeding' exception for the physician-patient privilege.  (Evid. Code, § 998 ['There is no [physician-patient] privilege . . . in a criminal proceeding.'].)  It has not done the same for the psychotherapist-patient privilege. . . .
>
> "Similarly, as a general matter at least, the privilege does not appear to be 'trumped' by the People's state constitutional right to due process.  By its very terms, the People's 'right to truth-in-evidence'

12

> under article I, section 28, [former] subdivision (d) [now subdivision, (f)(2)] of the California Constitution does not 'affect any existing statutory rule of evidence relating to privilege . . . .' Implicit therein is a constitutional determination that the privilege does not undermine the integrity or reliability of the truth-finding function of legal proceedings."

(*Menendez*, *supra*, 3 Cal.4th at pp. 456-457, fn. 18; see *Nielsen*, *supra*, 55 Cal.App.4th at p. 1154 ["The concept of balancing the interest in protecting the psychotherapist-patient privilege against the needs of the party seeking the information does not ordinarily apply to the privilege."].)[5]

The cases the District Attorney cites to support the proposition that its claimed compelling need to discover privileged information justifies a limited invasion of the psychotherapist-patient privilege are all distinguishable because they either did not involve a privilege at all (i.e., they involved a general privacy claim) or because they involved a statutory exception to a privilege. (See *Hill v. National Collegiate Athletic Assn.* (1994) 7 Cal.4th 1, 8-9 [no privilege involved]; *Stritzinger*, *supra*, 34 Cal.3d at pp. 512-514 [statutory child-abuse-reporting exception to the psychotherapist-patient privilege]; *Roe v. Superior Court* (1991) 229 Cal.App.3d 832, 838 [statutory child-abuse-reporting exception]; *Kirchmeyer v. Phillips* (2016) 245 Cal.App.4th 1394, 1401 [statutory exception authorizing medical review board "to issue investigatory subpoenas to obtain patient and physician records as part of an investigation of physician conduct"]; *Grafilo v. Wolfsohn* (2019) 33 Cal.App.5th 1024, 1032-1033 [medical review board

---

5    Even *Jones*, on which the District Attorney heavily relies, acknowledges that "[u]nder the statutory [privilege scheme], a party's need to know certain information will not overcome a nonparty's privilege under circumstances in which that privilege is otherwise properly invoked." (*Jones*, *supra*, 119 Cal.App.3d at p. 548.)

13

investigation]; *John B. v. Superior Court* (2006) 38 Cal.4th 1177, 1202 [exception under § 999 for " 'communication[s] relevant to an issue concerning the condition of the patient in a proceeding to recover damages on account of the conduct of the patient if good cause for disclosure of the communication is shown' "].)

## DISPOSITION

Let a writ issue (1) prohibiting the trial court from reviewing Fish's psychotherapy records, and (2) directing the trial court to vacate its June 5, 2019 order denying Fish's motion to quash and to enter a new order granting the motion.  The stay issued by this court on July 11, 2019, is vacated.

_____

HALLER, J.

WE CONCUR:


_____

BENKE, Acting P. J.



_____

AARON, J.

14